Case 1:20-cv-09064-AJN   Document 5   Filed 04/29/22   Page 1 of 11



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|   |   |
|---|---|
| United States,<br><br>   –against–<br><br>Miguel Zubiate,<br><br>      Defendant. | 18-cr-442 (AJN) |
| Miguel Zubiate,<br><br>      Movant,<br><br>   –against–<br><br>United States,<br><br>      Respondent. | 20-cv-9064 (AJN)<br><br>MEMORANDUM<br>OPINION & ORDER |

ALISON J. NATHAN, Circuit Judge, sitting by designation:

  Before the Court is Defendant Miguel Zubiate's Motion to Vacate, Set Aside, or Correct the Sentence brought under 28 U.S.C. § 2255. For the reasons that follow, Zubiate's motion is denied.

  **I. BACKGROUND**

  In March 2018, Zubiate was arrested and charged in a criminal complaint with three counts: (1) possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. §§ 922(k) and 2; (2) possession of a firearm in furtherance of a drug trafficking offense, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2; and (3) conspiring to distribute and possess with intent to distribute 100 grams and more of mixtures and substances containing a detectable

1

amount of heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. Dkt. No. 1 ("Compl."), ¶¶ 1-5.[1] The Complaint also named Javon Anthony Bussey as Zubiate's co-defendant and co-conspirator. *Id.* ¶¶ 3–7. Zubiate retained Mitchell Elman as counsel in March 2018. Dkt. No. 8; Dkt. No. 144 ("Elman Decl."), ¶ 1.

Following negotiations with Elman, in May 2018, the Government extended a plea offer to Zubiate that stipulated to an adjusted offense level of 27 and a criminal history category of II, with a corresponding sentencing range of 78–97 months and a 60-month mandatory minimum sentence (the "First Offer"). Dkt. No. 125[2] ("Def.'s Mot."), at 14; Dkt. No. 133 ("Gov't Opp'n"), at 5–6; Elman Decl. ¶¶ 6–7; Elman Decl., ex. B. The First Offer was conditioned on being accepted prior to Zubiate being indicted or receiving any discovery. Gov't Opp'n 4–5; Elman Decl. ¶¶ 4–7. The Government had rejected Elman's requests for pre-indictment discovery and explained that "we have a larger investigation into Mr. Zubiate and would produce discovery in due course if we were forced to indict, including when we indict or supersede on a (b)(1)(A) charge (plus the 924(c)) as discussed." Elman Decl., ex. A ("Correspondence"), at 4; *see* Gov't Opp'n 4–5; Elman Decl. ¶ 7. When Elman pressed the Government again to provide some pre-indictment discovery ("You understand. I'm asking him to plead without one document!!"), the Government reiterated, "Yes, understood. In exchange for not being indicted on the (b)(1)(A) and our agreement to drop the 924(c)." Correspondence 3.

Zubiate declined the First Offer. Def.'s Mot. 14–15; Elman Decl. ¶¶ 9–11. Elman continued, unsuccessfully, to attempt to negotiate a more favorable plea agreement, Gov't Opp'n 6; Elman Decl. ¶¶ 11–12, until June 19, 2018, when Zubiate was indicted on the same three

---

[1] Unless otherwise noted, all docket references are to 18-CR-442.

[2] Because this document is not paginated, references to specific pages are to the page numbers generated by the Court's Electronic Case Filing ("ECF") system.

counts as in the Complaint, Dkt. No. 18. Beginning in August 2018, the Government began producing discovery to Zubiate and his counsel, subject to a protective order, Dkt. No. 37, with productions continuing through January 2019. Gov't Opp'n 7; Elman Decl. ¶ 14; Elman Decl., ex. C. In late November or early December 2018, the Government confirmed to Elman that Bussey, Zubiate's co-defendant, was cooperating with the Government. Gov't Opp'n 7.

On December 11, 2018, the Government extended another plea offer to Zubiate (the "Second Offer"). The Second Offer reflected a stipulated Guidelines range of 151 to 188 months' imprisonment—nearly twice the range of the First Offer—with a mandatory minimum term of 60 months' imprisonment, resulting from larger quantities of drugs the Government could prove based on information from Bussey's cooperation. *Id.* at 8; Elman Decl. ¶ 16. Zubiate expressed disbelief at the significantly higher sentencing exposure reflected in the Second Offer, which ruptured his relationship with Elman. Def.'s Mot. 15; Elman Decl. ¶ 17. After the Second Offer expired, Zubiate was charged by superseding indictment, which expanded the time period and drug quantities of the charged conduct and added a new count. Dkt. No. 47. On January 2, 2019, another superseding indictment added a charge of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 2. Dkt. No. 54.

Two days later, Elman sought leave to withdraw as Zubiate's counsel, citing a "deteriorat[ion]" of their relationship "to the point where we cannot represent him any longer." Dkt. 58 at 1. On January 8, 2019, the Court held a conference—part of which was conducted under seal and *ex parte*—and appointed Natali Todd as defense counsel. Dkt. No. 78 at 6. The Court ultimately permitted Elman to withdraw at the final pretrial conference on January 16, 2019. Dkt. No. 76 at 18. That same day, the Government made a third plea offer (the "Third Offer") with identical terms to the Second Offer. Gov't Opp'n 11. Zubiate accepted the Third

Offer and, on February 13, 2019, pled guilty to the lesser included offense of Count 3 of the superseding indictment for conspiracy to distribute 100 grams or more of mixtures and substances containing heroin, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846. Def.'s Mot. 16; Gov't Opp'n 11; Dkt. No. 80.

On July 25, 2019, the Court sentenced Zubiate principally to an aggregate term of 102 months' imprisonment. Dkt. No. 93 at 35; Dkt. No. 90 at 2. Zubiate filed an appeal on August 8, 2019, Dkt. No. 98, which was withdrawn on October 30, 2019, Dkt. No. 108.

Zubiate, acting *pro se*, timely filed the present motion under 28 U.S.C. § 2255 on October 20, 2020, claiming ineffective assistance of counsel. Def.'s Mot. 12–14. Zubiate contends that Elman "advised him to reject the Government's [first] plea offer," and that Zubiate "followed [Elman's] advice," but that, had Elman advised Zubiate that "this was the best offer he would ever receive, he would have accepted the offer and, as promptly as possible, entered a Guilty Plea consistent with the plea agreement." *Id.* at 14–15. The Court set a briefing schedule, which required Zubiate to file any reply within 60 days after being served with the Government's response. Dkt. No. 126. The Government filed a memorandum opposing Zubiate's motion on December 30, 2020. Gov't Opp'n. To date, Zubiate has not filed any reply.

On February 3, 2022, the Court concluded that "Elman's testimony would assist the Government in responding to Defendant's motion and would assist the Court in resolving the motion." Dkt. No. 143 at 1. The Court further held that Zubiate "has waived attorney-client privilege as to such communications as a matter of law." *Id.* (citing *Rudaj v. United States*, Nos. 11-CV-1782 (DLC), 04-CR-1110-1 (DLC), 2011 WL 2610544, at *3 (S.D.N.Y. June 13, 2011)). Accordingly, the Court ordered Elman to provide "sworn testimony, in the form of an affidavit, addressing the Defendant's factual assertions and providing full details of his conversations with

4

the Defendant regarding the" First and Second Offers, "including statements by Mr. Elman and any statements by the Defendant concerning his reason for rejecting those offers." *Id.* at 2. The Court also granted the Government's request, raised in its opposition, to unseal the January 8, 2019 *ex parte* proceedings, and attached the transcript to its order. *Ex Parte* Tr.[3] Elman filed a declaration in response to the Court's order on February 18, 2022. Elman Decl. The Government filed a supplemental memorandum on March 4, 2022. Dkt. No. 146 ("Gov't Supp. Mem.").

## II. DISCUSSION

### a. Legal Standard

A petitioner may collaterally attack his conviction and sentence by "mov[ing] the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). To prevail on a § 2255 motion, a petitioner must show "constitutional error . . . or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)).

To prevail on a claim of ineffective assistance of counsel, a petitioner must show that (1) counsel's representation fell below an objective standard of reasonableness; and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). This standard is "highly demanding." *Bennett v. United States*, 663 F.3d 71, 85 (2d Cir. 2011) (quoting *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986)). The ineffective assistance of counsel claim "must be rejected if the [petitioner] fails to meet either the performance prong or the prejudice prong." *Id.*

---

[3] The transcript of the January 8, 2019 *ex parte* proceedings is attached to the order at Dkt. No. 143.

In evaluating the reasonableness of counsel's representation, the Court is "mindful of the diversity of the bar and the variety of approaches effective attorneys might employ when dealing with a particular set of facts." *Parisi v. United States*, 529 F.3d 134, 141 (2d Cir. 2008). This consideration is no less significant in the context of plea bargaining, which "by its nature, [is] defined to a substantial degree by personal style." *Missouri v. Frye*, 566 U.S. 134, 145 (2012). Indeed, "[t]he art of negotiation is at least as nuanced as the art of trial advocacy, and it presents questions further removed from immediate judicial supervision." *Id.* at 144–45 (quoting *Premo v. Moore*, 562 U.S. 115, 125 (2011)). Thus, "[c]ounsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing" the acceptance or rejection of "a plea enjoys a wide range of reasonableness." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000). As a result, the Court is "highly deferential" and applies a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689; *accord United States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990). Simple disagreement with counsel's chosen strategy, especially with the benefit of hindsight, is insufficient to support an ineffective assistance of counsel claim. *See United States v. Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986); *Camper v. United States*, Nos. 19-CV-2000 (AJN), 13-CR-378 (AJN), 2021 WL 4504700, at *2 (S.D.N.Y. Oct. 1, 2021). Rather, "the record must demonstrate that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed to the defendant by the Sixth Amendment.'" *Wilson v. Mazzuca*, 570 F.3d 490, 502 (2d Cir. 2009) (quoting *Strickland*, 466 U.S. at 687).

To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

6

*Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. In the plea-bargaining context, "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.,* that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Lafler v. Cooper*, 566 U.S. 156, 164 (2012).

### b. Zubiate's Ineffective Assistance of Counsel Claim

Zubiate argues his counsel was ineffective because Elman advised Zubiate to reject the First Offer. *See* Def.'s Mot. 14–15. Zubiate claims Elman "met with him briefly and advised him to reject the Government's plea offer, encouraging him to fight the case, and stating that he could suppress evidence, could get him out on bail, and/or could obtain a lower sentence than offered." *Id.* at 14. Zubiate therefore does not claim that Elman failed to convey the First Offer's terms or provide counsel regarding the strengths and weaknesses of the Government's case. But Zubiate "'may not use hindsight to second-guess [his counsel's] strateg[ic] choices' simply because []he is dissatisfied with the result." *Morales v. United States*, Nos. 18-CV-10120 (RJS), 12-CR-322 (RJS), 2022 WL 976822, at *4 (S.D.N.Y. Mar. 31, 2022) (Sullivan, J.) (quoting *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994)). Given *Strickland*'s "strong presumption," 466 U.S. at 689, that counsel acted competently, it is unlikely that Zubiate's account of Elman's conduct—even if true—would fall outside "the wide range of strategic discretion accorded to counsel," *Morales*, 2022 WL 976822, at *4, and violate Elman's "duty to

7

inform his client of the evidence against him and the benefits and drawbacks of accepting the plea offers," *United States v. Nunez-Polanco*, 20 F. Supp. 3d 473, 480–81 (S.D.N.Y. 2014).

Significantly, however, Zubiate's description of Elman's advice is at odds with the record. Elman attests, in a sworn declaration, that he "did not counsel [Zubiate] to reject the" First Offer, but rather "strongly urged him to accept the plea agreement because I believed that the Government's case, based on my conversation with the AUSA, my review of the complaint, Defendant's criminal history, the applicable statutes and Guideline provisions and my experience . . . all clearly militated in favor of accepting this plea agreement." Elman Decl. ¶ 10. According to Elman, *Zubiate* "vigorously opposed accepting any plea agreement with a Guideline range of 78 to 97 months" because in Zubiate's "view, the case against him was unprovable" and "if he 'waited it out' longer, the Government would blink and come down in their offer." *Id*. ¶ 9. Elman says he "explained to Defendant that this course was folly given AUSA Greenwood's statements to me that the Government could prove higher drug quantities than what it had already charged Defendant with, but Defendant was insistent in his desire to not accept the [First Offer]." *Id*. Elman's contrary sworn statements, alone, are likely sufficient to disregard Zubiate's account. *See, e.g.*, *Naranjo v. United States*, Nos. 17-CV-9573 (JSR) (BCM), 13-CR-351 (JSR), 2021 WL 1063442, at *6 (S.D.N.Y. Feb. 26, 2021) (disregarding petitioner's "unsupported assertions" of ineffective assistance as "starkly at odds with the more detailed affidavit of [his] attorney"), *report and recommendation adopted*, 2021 WL 1317232 (S.D.N.Y. Apr. 8, 2021); *Stitsky v. United States*, Nos. 15-CV-7889 (KMW), 06-CR-357 (KMW), 2018 WL 10741470, at *6 (S.D.N.Y. Oct. 25, 2018) ("Where, as here, a habeas court is faced with self-serving allegations that are contradicted by a credible affirmation from a trial attorney, it may choose to credit the attorney and dismiss the ineffective assistance of counsel claim without

8

further hearings." (cleaned up)), *adhered to on reconsideration*, 2019 WL 1254566 (S.D.N.Y. Mar. 19, 2019).

Moreover, Zubiate's account is "significantly undercut by his own" statements at the January 8, 2019 *ex parte* hearing. *Naranjo*, 2021 WL 1063442, at *6. At the hearing, Zubiate explained that one of his issues with Elman's representation "was that I was asked to take a plea from the beginning with no discovery, and that's been my back-and-forth with him from the beginning." *Ex Parte* Tr. 7. This assertion is consistent with Elman's testimony that he encouraged Zubiate to accept the (pre-discovery) First Offer and it was Zubiate who refused, but in stark contrast to the claims in Zubiate's motion. Similarly, Zubiate stated at the hearing that "[a]nother issue" he and Elman had was a disagreement over pre-trial motions. *Id*. According to Zubiate, Elman "said there w[ere] no motions. . . . I thought there was always some type of motions to file." *Id*. In contrast, Zubiate's present motion claims Elman "encourage[ed]" Zubiate "to fight the case" and claimed he could, *e.g.*, "suppress evidence." Def.'s Mot. 14. In sum, the record supports the conclusion that Elman did, in fact, counsel Zubiate to accept the First Offer, and it follows, in this context, that Elman's conduct did not fall below an objective standard of reasonableness.

In any event, the same record establishes that Zubiate's claims would fail on the second *Strickland* prong even if he could satisfy the first. Although Zubiate's motion claims that "he would have accepted" the First Offer had Elman counseled him differently, *id*. at 14–15, that "statement is not sufficient to demonstrate prejudice . . . because [Zubiate] must present 'objective evidence other than [his] self-serving assertions to establish that [he] would have pled guilty had he received constitutionally effective assistance of counsel.'" *Stitsky*, 2018 WL 10741470, at *6 (quoting *Melo v. United States*, 825 F. Supp. 2d 457, 463 (S.D.N.Y. 2011)).

9

Here, Zubiate's "own statements make clear that under the terms of the agreement, he would not have accepted the [First] [O]ffer." *McLeod v. United States*, Nos. 12-CR-354 (LAP), 17-CV-8212 (LAP), 2022 WL 953149, at *2 (S.D.N.Y. Mar. 29, 2022). As Zubiate explained at the *ex parte* hearing, "the discovery issue was like a big deal to me because I felt uncomfortable taking any plea without seeing my discovery." *Ex Parte* Tr. 8. But both the Government's filings in opposition and contemporaneous communications confirm that the First Offer was contingent on being accepted prior to producing any discovery, notwithstanding Elman's efforts to obtain some discovery prior to indictment. *See* Gov't Opp'n 4–6; Gov't Supp. Opp'n 4–5; Correspondence 3–4. Accordingly, Zubiate "has not demonstrated a reasonable probability he would have accepted the" First Offer if Elman counseled him to do so. *Stitsky*, 2018 WL 10741470, at *6.

## III. CONCLUSION

For the foregoing reasons, the Court DENIES Mr. Zubiate's motion to vacate under 28 U.S.C. § 2255.[4]

No evidentiary hearing is necessary because the files and records of the case conclusively show that Zubiate is not entitled to relief. 28 U.S.C. § 2255(b); *see Puglisi v. United States*, 586

---

[4] Zubiate's § 2255 motion also attached a motion pursuant to Rules 6 and 7 of the Rules Governing Section 2255 Proceedings in the U.S. District Courts (1) requesting that his former counsel file an affidavit responding to the allegations in the § 2255 motion and that it be considered part of the record and (2) requesting that the Court appoint Zubiate counsel. Def.'s Mot. 19–20. Zubiate's first request was addressed when Elman filed a declaration in response to the Court's February 3, 2022 order. As for the appointment of counsel, under the Criminal Justice Act there is no requirement that an indigent habeas petitioner be appointed *pro bono* counsel, *United States v. Doe*, 365 F.3d 150, 155 (2d Cir. 2004), unless the Court determines that an evidentiary hearing is necessary, *Graham v. Portuondo*, 506 F.3d 105, 107 (2d Cir. 2007) (per curiam). Appointment of *pro bono* counsel must be done judiciously in order to preserve the precious commodity of volunteer lawyers for those litigants who truly need a lawyer's assistance. *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172–73 (2d Cir. 1989) (per curiam). In deciding whether to grant an indigent *pro se* petitioner's request for *pro bono* counsel, the Court must first decide whether the petitioner's claims seem likely to be of substance. *Hodge v. Colon*, 802 F.2d 58, 60–61 (2d Cir. 1986); *see, e.g., Anderson v. Bradt*, No. 13-CV-4502 (JS), 2013 WL 5208045, at *1 (E.D.N.Y. Sept. 13, 2013) (applying the *Hodge* framework to habeas corpus proceeding). For the reasons stated above, the Court has concluded that Zubiate's claim is not likely to be of substance, and that no evidentiary hearing is necessary. Zubiate's motion to appoint *pro bono* counsel is denied.

F.3d 209, 213 (2d Cir. 2009); *Williams v. United States*, Nos. 21-CV-6624 (NSR), 17-CR-506-2 (NSR), 2022 WL 685497, at *4 (S.D.N.Y. Mar. 8, 2022). Because Zubiate has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. *See* 28 U.S.C. § 2253. Additionally, this Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue). Accordingly, *in forma pauperis* status is denied.

The Clerk of Court is respectfully directed to terminate 18-CR-442, Dkt. No. 125; to close Case No. 20-CV-9064; and to mail a copy of this Memorandum Opinion & Order to Zubiate at the address listed on the docket and copied below.

    Miguel Zubiate
    Reg. No. 64662-053
    FCI Fort Dix
    P.O. Box 2000
    Joint Base MDL, NJ 08640

SO ORDERED.

Dated: April 29, 2022
      New York, New York

_____
ALISON J. NATHAN
United States Circuit Judge,
sitting by designation